UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DALE BLANCHARD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1762** |
| **BRYAN ADAMS, ET AL.** | **SECTION "C" (3)** |

## ORDER

On November 30, 2011, the Motion to Extend Deadline for Amendments to Pleadings [Doc. #20] and the Motion for Leave of Court to File Second Amended Complaint [Doc. #21] came on for oral hearing before the undersigned. Present were Alvin Bordelon, Jr. and Rachel Kellogg on behalf of defendants. Neither plaintiff nor his counsel appeared. After the oral hearing, the Court took the motion under advisement. Having reviewed the motions, the opposition, the case law and the parties' oral arguments, the Court rules as follows.

**I.    Background**

The complaint and first amended complaint allege as follows. Blanchard worked for defendant Terrytown Fifth District Volunteer Fire Department, Inc. ("Terrytown Fire") as a firefighter, most recently earning $51,000 per year. Chief Gerald Delucky hired Blanchard in October 2003. Even though Blanchard suffers from chronic kidney disease, a fact known to later-Chief Bryan Adams and to Terrytown Fire, Blanchard participated in and passed the required, yearly

physical-agility and medical tests, which included weight-lifting and running on a treadmill, at West Jefferson General Hospital.  Blanchard worked well and without difficulties until May 2011.

On June 1, 2011, Blanchard contacted the media as a taxpayer to address issues of concern to the community regarding alleged abuses of official Terrytown Fire property and taxpayer money.  Chief Adams had already been notified by Blanchard of Blanchard's dissatisfaction and concerns about these issues, and Adams knew of Blanchard's intent to make these concerns public.

At about the same time, Chief Adams informed Blanchard that he would be transferred to Station 51, where the Chief's office was located.  Adams informed Blanchard that he (Adams) would make it his business to make sure that Blanchard would have no rest while working there and would be required to work non-stop from 7:00 a.m. to 6:00 p.m.  Blanchard informed the Chief that his chronic kidney condition required that he be sufficiently hydrated, particularly considering the constant possibility of performing emergency services in high heat and humidity.  Blanchard asked to take leave the day of June 1, 2011 to consider his options.

The next day, Blanchard spoke with Chief Adams via text message and asked for a meeting to consider the issues occasioned by his kidney disease.  Adams' reply was that Blanchard needed to show for work at Station 51 or be considered a no-show.  Blanchard agreed to report to work as Adams demanded.

On June 3, 2011, Adams informed Blanchard that he had conducted a board meeting the night before and that Blanchard was immediately terminated.  Adams gave no reason for the termination.

Blanchard then sued defendants for a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132 *et seq.*, and under 42 U.S.C. § 1983 for retaliating against him for

having exercised his rights under the First Amendment to the Constitution. For purposes of this motion, on motion by defendant, the District Court dismissed *without prejudice* Blanchard's claim under the ADA because he failed to exhaust his administrative remedies.

## II.     The Parties' Contentions

### A.     Plaintiff's Motion to Extend Deadline for Amendments to Pleadings

After the District Court dismissed his ADA claim for failure to exhaust, plaintiff immediately filed a claim with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff had not yet received his right-to-sue letter by the deadline to amend pleadings in the Scheduling Order.

Plaintiff argues that he has shown good cause under Federal Rule of Civil Procedure 16(b) to amend the scheduling order. He notes that within 15 days of the dismissal of the ADA claim, he had filed his charge with the EEOC. Despite his best efforts, he contends, he could not meet the deadline to amend because he needed to await the receipt of his right-to-sue letter. He thus seeks an extension of 30 days to amend his pleadings. He contends that defendants will suffer no undue prejudice given the infancy of the lawsuit.

### B.     Plaintiff's Motion for Leave of Court to File Second Amended Complaint

One week after plaintiff filed the aforementioned motion to extend, he received his right-to-sue letter. He thus seeks leave to amend his complaint to allege his claim under the ADA. He contends that the deadline to amend passed only one week before he filed the motion, and discovery has just begun. He maintains that defendants will suffer no undue prejudice.

### C.     Defendants' Opposition

After asserting that plaintiff ambushed it with the charge filed with the EEOC and rushed to obtain a right-to-sue letter, defendants first argue that plaintiff had ample time to file his charge

earlier with the EEOC and await the EEOC's administrative process.  Defendants contend that plaintiff rushed to file suit (and chose not to await the running of the EEOC administrative process) because Chief Adams had announced his candidacy for the Louisiana legislature, and plaintiff wanted to smear him in the press.  Plaintiff had started a website against Adams and published numerous flyers charging Adams with driving a government vehicle under the influence of alcohol and forcing firefighters to act as his personal drivers by picking him up at bars and forcing them to wash and wax his girlfriend's car.  Defendants contend that plaintiff had capable counsel and every opportunity to satisfy administrative prerequisites.  Defendants argue that he simply chose not to do so.

Defendants also assert that plaintiff can not meet the requirements of Rule 15 because the deadline to amend has passed.  Defendants note that the EEOC wholly failed to attempt to investigate plaintiff's claim after plaintiff sent them a letter in which he sought en expedited right-to-sue letter.  Defendants argue that the right-to-sue letter thus has no validity.  Defendants maintain that the EEOC had no right to issue the right-to-sue letter before the expiration of the 180-day administrative period. Citing 29 C.F.R. § 1601.28(a)(2), defendants note that a plaintiff may bypass the 180-day administrative period but argues that the regulation is inconsistent with the congressional mandate under 42 U.S.C. § 2000e-5(f)(1).  Citing case law, defendants note that several courts have held that the regulation may not excuse compliance with the statute.  Defendants note that the language in the right-to-sue letter mirrors that in the regulation, but the letter has no certification by the proper administrative personnel that the EEOC could not administratively

4

process the charge within 180 days.[1]

## III.   Law and Analysis

Plaintiff must satisfy the Rule 16 "good cause" test because the amendment deadline in the Scheduling Order passed before he filed his motion to amend. *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). The good cause requirement for the modification of a scheduling deadline requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Id.* at 535.

Plaintiff failed to meet the deadline for amendments here because he needed to await the arrival of his right-to-sue letter. The Court finds that the deadline to amend in the District Court's Scheduling Order could not be reasonably met despite plaintiff's due diligence. After the District Court dismissed his ADA claim *without prejudice*, plaintiff timely filed his charge of discrimination with the EEOC and needed to await his right-to-sue letter before moving to amend his complaint. After plaintiff received his right-to-sue letter, he filed his motion to amend one week later. While the Court does not condone filing a lawsuit before exhausting administrative remedies under Title VII, the Court notes that plaintiff missed the deadline to amend here by only one week, this lawsuit is in its infancy, and defendants can demonstrate no prejudice at this early date. Denying the motion would only be an exercise in futility. Plaintiff would simply file a separate lawsuit that would then be consolidated with this one and which would subject the Court to further motion practice.

Lastly, the Court notes that defendants have cited the Court to no case law – and this Court

---

[1]   Defendants lastly contend that Terrytown Fire is not a governmental entity or political subdivision for purposes of the ADA.

has found none – that would render relevant to the "good cause" analysis a plaintiff's motive for filing a lawsuit before exhausting his administrative remedies, and an opposition to a motion to amend and/or to extend deadlines is not the proper vehicle through which to challenge the constitutionality of the EEOC's regulation or its assertion that it could not timely investigate plaintiff's claim.  That is the subject of a motion to dismiss and/or a motion for summary judgment.

## IV.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Extend Deadline for Amendments to Pleadings [Doc. #20] is DISMISSED WITHOUT PREJUDICE AS MOOT.

**IT IS FURTHER ORDERED** that the Motion for Leave of Court to File Second Amended Complaint [Doc. #21] is GRANTED.

New Orleans, Louisiana, this 13th day of December, 2011.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**